UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

TROY WHITE,

    Petitioner,

    v.

NETHANJAH BREITENBACH, *et al.*,

    Respondents.

Case No. 2:21-cv-01800-GMN-VCF

**ORDER**

Troy White, who is incarcerated at Nevada's Lovelock Correctional Center, brings this habeas corpus action under 28 U.S.C. § 2254 challenging his convictions of second-degree murder with use of a deadly weapon; attempted murder with use of a deadly weapon; carrying a concealed firearm; and child abuse, neglect or endangerment. White is represented by appointed counsel. The respondents move to dismiss certain claims in White's amended petition, arguing that those claims are unexhausted, procedurally defaulted and/or not cognizable in this federal habeas action. The Court grants the motion to dismiss in part and denies it in part as is explained below and sets a schedule for Respondents to file an answer, responding to White's remaining claims.

I.    **Background**

On April 17, 2015, a Clark County jury found White guilty of second-degree murder with use of a deadly weapon; attempted murder with use of a deadly weapon; carrying a concealed firearm; and five counts of child abuse, neglect or endangerment. ECF No. 21-19. The trial court sentenced White to what amounts to an aggregate sentence of life in prison with parole possible after 31 years. ECF No. 21-44; *see also* ECF No. 13 at 6. White appealed. *See* ECF No. 21-45 (opening brief on appeal). The Nevada Supreme Court affirmed on April 26, 2017. ECF No. 22-10.

In its order affirming the judgment of conviction, the Nevada Supreme Court described the background of the case as follows:

> Appellant Troy White (White) and his wife Echo Lucas-White (Lucas) became estranged.  During this time, Lucas remained in the home with the children and White became aware that Lucas began romantically seeing a mutual friend, Joseph Averman.  One afternoon, White arrived at the home and requested to speak with Lucas.  After the discussion escalated, he shot and killed Lucas.  He then shot Averman two or three times, but Averman survived.  White fled to Arizona, where he turned himself in without conflict.
>
> At trial, the State introduced over 100 text messages between White and Lucas to demonstrate White's intent to kill.  White sought to rebut those messages by introducing two voicemails that he had left for Lucas on the day of the shooting.  The district court excluded the voicemails as cumulative hearsay.
>
> White also proffered a jury instruction pertaining to whether provocation for heat of passion may occur over time.  The district court rejected the instruction because it did not accurately state Nevada law.  Instead, the district court offered standard voluntary manslaughter instructions.  White was found guilty on all charges and is serving an aggregate sentence of life in prison with the possibility of parole after 31 years.

*Id*. at 2–3; *see also* ECF No. 46-10 at 6–8 (State's detailed description of crimes in response to White's second state post-conviction habeas petition).

On April 24, 2018, White filed a counseled post-conviction petition for writ of habeas corpus in the state district court. ECF No. 22-13; *see also* ECF No. 22-19 (supplemental brief in support of petition).  The state district court denied that petition in a written order filed on April 13, 2021. ECF No. 22-41.  White appealed. *See* ECF No. 22-49 (opening brief on appeal).  The Nevada Court of Appeals affirmed on February 3, 2022. ECF No. 22-56.

Meanwhile, on September 29, 2021, this Court received from White a *pro se* petition for writ of habeas corpus, initiating this action. ECF No. 1.  The Court appointed counsel for White (ECF No. 5), and with counsel White filed an amended petition—his operative petition—on May 31, 2022. ECF No. 13. In his amended petition, White asserts the following claims:

1. White's federal constitutional rights were violated on account of ineffective assistance of his trial counsel.

   A. "Trial counsel was ineffective for not properly arguing for voluntary manslaughter."

   B. "Trial counsel's handling of the child abuse, neglect, or endangerment charges was ineffective."

   C. "Counsel was ineffective for not objecting to the weapon enhancement as unconstitutional under the Double Jeopardy Clause."

   D. "Trial counsel was ineffective for not objecting to the prosecution misstating the standard for voluntary manslaughter."

   E. "Trial counsel was ineffective for failing to object to the State's insinuation of prior acts of domestic violence."

   F. "Trial counsel was ineffective for failing to object to erroneous jury instructions."

   G. "White suffered cumulative prejudice from counsel's errors."

2. White's federal constitutional rights were violated because the trial court "refus[ed] to allow the defense to introduce voicemails White left Lucas that would have contradicted the State's arguments and cast the evidence in a different light."

3. White's federal constitutional rights were violated as a result of prosecutorial misconduct.

4. White's federal constitutional rights were violated on account of ineffective assistance of his appellate counsel because his appellate counsel failed to raise the following claims on his direct appeal:

   A. A claim of prosecutorial misconduct regarding the prosecution's alleged misstatement in closing arguments of the legal standard for voluntary manslaughter.

   B. A claim regarding the prosecution's questioning of Witnesses Tim Henderson and Amber Gains.

   C. A challenge to the reasonable doubt instruction.

   D. A challenge to the equal and exact justice instruction.

5. "The fundamental fairness of Troy White's trial was undermined by the combined effect of the errors outlined in this petition."

*Id*.

3

Respondents moved to dismiss White's amended petition. ECF No. 23. However, the Court granted a motion by White to stay the case to allow him to further exhaust claims in state court and denied the motion to dismiss as moot. ECF No. 30. The stay was imposed on January 9, 2023. *Id*.

White filed a second state post-conviction habeas petition on September 27, 2022. ECF No. 46-4.  In a written order filed on March 16, 2023, the state district court ruled that petition procedurally barred and denied White relief. ECF No. 46-13.  White appealed. *See* ECF No. 46-29 (opening brief on appeal).  The Nevada Supreme Court affirmed on May 15, 2024. ECF No. 46-36.

The stay was lifted on July 29, 2024. ECF No. 34.  On April 30, 2025, Respondents filed the motion to dismiss that is now before the Court. ECF No. 47. White filed an opposition to the motion and Respondents filed a reply. ECF Nos. 52, 57.

**II.    Discussion**

**A.    Exhaustion**

A state prisoner first must exhaust state court remedies on a habeas claim before presenting the claim to the federal courts. 28 U.S.C. § 2254(b)(1)(A).  This exhaustion requirement ensures that the state courts, as a matter of comity, have the first opportunity to address and correct alleged violations of federal constitutional guarantees. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).  "A petitioner has exhausted his federal claims when he has fully and fairly presented them to the state courts." *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999)).  To satisfy the exhaustion requirement, a claim must have been raised through one complete round of either direct appeal or collateral proceedings to the highest state court level of review available. *O'Sullivan*, 526 U.S. at 844–45; *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003) (en banc).

To properly exhaust a claim, the claim as asserted in state court "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Woods*, 764 F.3d at 1129 (quoting *Gray v.*

4

*Netherland*, 518 U.S. 152, 162–63 (1996) and *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008)).  "A claim has not been fairly presented in state court if new factual allegations either 'fundamentally alter the legal claim already considered by the state courts,' or 'place the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it.'" *Dickens v. Ryan*, 740 F.3d 1302, 1318 (9th Cir. 2014).

### B.    Procedural Default

Federal courts are barred from considering a state prisoner's habeas claim if the state courts denied the claim based on an independent and adequate state procedural rule. *Edwards v. Carpenter*, 529 U.S. 446, 454-55 (2000).  When a prisoner "procedurally defaults" a federal claim, judicial review is barred unless he can show either: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  To demonstrate cause, a petitioner must show that some external and objective factor impeded his efforts to comply with the state's procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280–81 (2012).  Ignorance or inadvertence does not constitute cause. *Murray v. Carrier*, 477 U.S. 478, 486–87 (1986).  To show prejudice, a petitioner bears the burden of showing not merely that the error created a possibility of prejudice, but that the error worked to his actual and substantial disadvantage, infecting the entire proceeding with constitutional error. *Id*. at 494; *Bradford v. Davis*, 923 F.3d 599, 613 (9th Cir. 2019).

The Supreme Court has recognized that under certain circumstances it may be appropriate for a federal court to anticipate a state-law procedural bar of an unexhausted claim, and to treat such a claim as subject to the procedural default doctrine.  Thus, a federal court need not dismiss an exhausted claim if it is clear that the state court would find the claim procedurally barred. *Coleman*, 501 U.S. at 731 ("An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court."); *see also Castille v. Peoples*,

489 U.S. 346, 351–52 (1989); *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014); *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002).

With one exception, Nevada's standards for determining whether there is cause and prejudice, such that a petitioner can overcome a state procedural bar, are functionally identical to the federal standards for cause and prejudice. *See Robinson v. Ignacio*, 360 F.3d 1044, 1052 n.3 (9th Cir. 2004); *Mitchell v. State*, 122 Nev. 1269, 1273–74, 149 P.3d 33, 35–36 (2006). The exception is—in noncapital habeas cases only—a claim of ineffective assistance of trial counsel procedurally barred in state court, where the petitioner claims, as cause, the ineffective assistance or absence of counsel in the initial state postconviction habeas action. Under Nevada law, such ineffective assistance or absence of post-conviction counsel cannot function as cause to excuse the procedural bar. *Brown v. McDaniel*, 130 Nev. 565, 571–76, 331 P.3d 867, 871–75 (2014). But in *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court ruled that, in federal court, such ineffective assistance or absence of post-conviction counsel may serve as cause. Under *Martinez*, to overcome the procedural, the petitioner must demonstrate that (1) the claim of ineffective assistance of trial counsel is substantial; (2) ineffective assistance or absence of post-conviction counsel was the cause of the default; (3) the postconviction proceedings were the initial review proceedings for the ineffective assistance of trial counsel claim; and (4) state law requires, or practically requires, that the claim be raised in the initial postconviction proceedings. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013).

**C.　　Analysis**

**1.　　Claim 1A**

In Claim 1A, White claims that his federal constitutional rights were violated on account of ineffective assistance of his trial counsel because his trial counsel did not properly argue for manslaughter. ECF No. 13 at 10–20.

White admits in his amended petition that he did not assert Claim 1A in his first state habeas action. ECF No. 13 at 9. White did assert Claim 1A in his second state

habeas action (ECF No. 46-4 at 8–19), but that petition was ruled procedurally barred (ECF No. 46-36).  So, Claim 1A is subject to the procedural default doctrine in this case. This much is undisputed. *See* ECF No. 52 at 17.

White argues, though, that he can overcome the procedural default of Claim 1A under *Martinez*. *Id.*  Anticipating that the cause-and-prejudice analysis under *Martinez* will be intertwined with the analysis of the claim on its merits—because there will likely be at least some overlap of the briefing of the two issues—the Court will defer the question whether White can overcome the procedural default of Claim 1A until after the parties have briefed the merits of White's remaining claims.  Therefore, Respondents' motion to dismiss Claim 1A will be denied, without prejudice to Respondents asserting the procedural default defense to the claim in their answer.

### 2. Claims 1B and 1C

In Claim 1B, White claims that his federal constitutional rights were violated on account of ineffective assistance of his trial counsel because "[t]rial counsel's handling of the child abuse, neglect, or endangerment charges was ineffective." ECF No. 13 at 20–24.  In Claim 1C, White claims that his federal constitutional rights were violated on account of ineffective assistance of his trial counsel because his trial counsel did not "object[ ] to the weapon enhancement as unconstitutional under the Double Jeopardy Clause." *Id*. at 24–27.

White concedes that he has never presented either of these claims in state court. ECF No. 52 at 11.  He takes the position that both claims are technically exhausted, because if he was to present them in state court now, they would be ruled procedurally barred. *Id*.  He goes on to argue that he can overcome the anticipatory procedural default under *Martinez*.  As with Claim 1A, the Court will defer the question whether White can overcome the procedural defaults of Claims 1B and 1C until the parties have briefed the merits of White's remaining claims.  Respondents' motion to dismiss Claims 1B and 1C will be denied without prejudice to Respondents asserting the procedural default defense to those claims in their answer.

### 3.    Claim 1D

In Claim 1D, White claims that his federal constitutional rights were violated on account of ineffective assistance of counsel because his trial counsel did not "object[ ] to the prosecution misstating the standard for voluntary manslaughter." ECF No. 13 at 27–30.

Respondents argue that Claim 1D is unexhausted in state court. ECF No. 52 at 47–48.  The Court determines, however, that White exhausted this claim by asserting it on the appeal in his first state habeas action. *See* ECF No. 22-49 at 40–44.  White arguably presents the claim in more detail here than he did in state court, but that does not necessarily render it unexhausted.  To exhaust a claim, the petitioner must "fairly present" it to the state courts, meaning he must describe "both the operative facts and the federal legal theory on which his claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Walden v. Shinn*, 990 F.3d 1183, 1196 (9th Cir. 2021) (quoting *Davis*, 511 F.3d at 1009).  The claim as asserted in state court must be the "substantial equivalent" of the claim asserted in federal court. *Lopez v. Schriro*, 491 F.3d 1029, 1040 (9th Cir. 2007) (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)).  "[V]ariations in the legal theory or factual allegations" are acceptable so long as the "ultimate question for disposition" is the same. *Picard*, 404 U.S. at 277 (quoting *United States ex rel. Kemp v. Pate*, 359 F.2d 749, 751 (7th Cir. 1966)).  White's claim as presented in this case is not fundamentally altered or placed in a significantly different and stronger evidentiary posture than in state court. *See Dickens*, 740 F.3d at 1318.  The Court will deny Respondents' motion to dismiss Claim 1D.

### 4.    Claim 1E

In Claim 1E, White claims that his federal constitutional rights were violated on account of ineffective assistance of counsel because his trial counsel "fail[ed] to object to the State's insinuation of prior acts of domestic violence." ECF No. 13 at 30–31.

White's claim concerns the testimony of witnesses Tim Henderson and Amber Gains. *See id.*

White claims he exhausted this claim in his first state habeas action. ECF No. 13 at 9.  Respondents argue that Claim 1E is unexhausted to the extent the claim involves the testimony of Gains. *See* ECF No. 52 at 7–8.  But in making this argument, Respondents apparently overlook a footnote in White's opening brief on the appeal in his first state habeas action. *See* ECF No 22-49 at 33 n.6.  White did, in state court, raise the issue with respect to the testimony of Gains.  Ground 1E is fully exhausted. The motion to dismiss Ground 1E will be denied.

### 5. Claim 1F

In Claim 1F, White claims that his federal constitutional rights were violated on account of ineffective assistance of his trial counsel because his trial counsel "fail[ed] to object to erroneous jury instructions." ECF No. 13 at 32–33.  White claims his trial counsel should have objected to the jury instructions on reasonable doubt (Instruction No. 27) and "equal and exact justice" (Instruction No. 38). *Id.*

White claims he exhausted this claim in his first state habeas action. ECF No. 13 at 9.  The Court agrees.  White asserted this claim on the appeal in his first state habeas action, and the Nevada Court of Appeals, ruling on the merits of the claim, affirmed the denial of relief on the claim. ECF No. 22-49 at 44–47; ECF No. 22-56 at 5–6.  The Court will deny the motion to dismiss Claim 1F.

### 6. Claim 2

In Claim 2, White claims that his federal constitutional rights were violated because the trial court "refus[ed] to allow the defense to introduce voicemails White left Lucas that would have contradicted the State's arguments and cast the evidence in a different light." ECF No. 13 at 34–37.

White claims he exhausted this claim on his direct appeal. ECF No. 13 at 34.  But Respondents point to White's opening brief on the direct appeal, and show that, while White did assert a claim regarding the admissibility of the voicemails, he did not claim

that the exclusion of the voicemails from evidence violated his federal constitutional rights. ECF No. 47 at 8–9.  In his opposition to the motion to dismiss, White does not contradict Respondents' argument, but he argues that he claimed a federal constitutional violation in his reply brief on the appeal. ECF No. 52 at 6–7. However, under Nevada law, an appellant is not allowed to assert, in a reply brief on appeal, a claim not raised in the opening brief. *See* NRAP 28(c) (reply brief is "limited to answering any new matter set forth in the opposing brief"); *Khoury v. Seastrand*, 132 Nev. 520, 530 n.2, 377 P.3d 81, 88 n.2 (2016) (issue raised for first time in reply brief forfeited); *LaChance v. State*, 130 Nev. 263, 277 n.7, 321 P.3d 919, 929 n.7 (2014) (declining to consider issue raised for first time in reply brief).  Indeed, the Nevada Supreme Court did not, in its order of affirmance, discuss any federal constitutional aspect of the claim regarding exclusion of the voicemails from evidence. *See* ECF No. 22-10 at 3–5.

Presenting a claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation of the claim. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Exhaustion cannot be achieved by procedurally deficient or improper means. *Id*.  Because petitioner presented Claim 2 to the Nevada Supreme Court in a procedurally defective manner, the claim was not exhausted.

Because White concedes that any attempt to return to state court now would be procedurally barred, this claim is technically exhausted and procedurally defaulted. *Martinez* does not apply because this is not a claim of ineffective assistance of trial counsel.  White does not make any argument that he can overcome this procedural default.  Respondents' motion to dismiss Claim 2 will be granted on the ground of procedural default.

### 7.    Claim 3

In Claim 3, White claims that his federal constitutional rights were violated as a result of prosecutorial misconduct. ECF No. 13 at 37–39.  The prosecutorial misconduct

he alleges is the prosecution's misstatement in closing arguments of the legal standard for voluntary manslaughter. *See id*.  This is the substantive analog of the claim of ineffective assistance of trial counsel claim in Claim 1D, discussed above.

White admits that he did not assert this substantive prosecutorial misconduct claim in state court on his direct appeal, where under Nevada law it should have been raised. *See* ECF No. 13 at 37.  Rather, in Claim 1D, discussed above, he claims his trial counsel was ineffective for not raising the issue at trial, and in Claim 4, discussed below, he claims that his appellate counsel was ineffective for not raising the issue on his direct appeal.

Here again, because White concedes that any attempt to return to state court now would be procedurally barred, the claim is technically exhausted and procedurally defaulted.  White argues that he can overcome the procedural default by a showing of cause and prejudice based on ineffective assistance of his trial and appellate counsel, which claims of ineffective assistance of counsel are asserted in Claims 1D and 4.  As both of those claims of ineffective assistance of counsel are arguably procedurally viable (*see Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)), there is a possibility that White will be able to overcome the procedural default.  However, the cause-and-prejudice analysis will be intertwined with the merits of White's remaining claims, so the Court will defer the question whether White can show cause and prejudice to overcome the procedural default of Claim 3 until after the parties have briefed the merits of his remaining claims.  Respondents' motion to dismiss Claim 3 will be denied, without prejudice to Respondents asserting the procedural default defense to the claim in their answer.

### 8.     Claim 4

In Claim 4, White claims that he was denied his federal constitutional rights because of ineffective assistance of appellate counsel. ECF No. 13 at 39–43.  White faults his appellate counsel for failing to raise the following claims on his direct appeal:

A.    A claim of prosecutorial misconduct regarding the prosecution's alleged misstatement in closing arguments of the legal standard for voluntary manslaughter.

B.    A claim regarding the prosecution's questioning of Witnesses Tim Henderson and Amber Gains.

C.    A challenge to the reasonable doubt instruction.

D.    A challenge to the equal and exact justice instruction.

*Id*.

Respondents argue that these claims are unexhausted. ECF No. 47 at 9–10. The Court disagrees. White asserted these claims on the appeal in his first state habeas action. *See* ECF No. 22-49 at 32–37, 40–47. White has not, in presenting these claims in this case, fundamentally altered them or placed them in a significantly different and stronger evidentiary posture than in state court. *See Dickens*, 740 F.3d at 1318. The Court will deny the motion to dismiss Claim 4.

### 9.    Claims 1G and 5

Claims 1G and 5 are cumulative-error claims. In Claim 1G, White claims he "suffered cumulative prejudice from [trial] counsel's errors." ECF No. 13 at 33–34. And in Claim 5, White claims "[t]he fundamental fairness of [his] trial was undermined by the combined effect of the errors outlined in this petition." *Id*. at 43–44.

Respondents argue that these claims are not cognizable in this action, and that at any rate they are not exhausted in state court. As it remains to be seen what, if any, error the Court will find when the merits of White's claims are addressed, it is not now possible to determine the contours of these cumulative error claims. The Court will therefore defer the consideration of Respondents' arguments regarding these claims. The motion to dismiss Claims 1G and 5 will be denied without prejudice to Respondents asserting their arguments regarding the viability of these cumulative error claims in their answer.

///

///

///

12

### III.   Conclusion

**IT IS THEREFORE ORDERED** that Respondents' Motion to Dismiss (ECF No. 47) is **GRANTED IN PART AND DENIED IN PART**.  Claim 2 is dismissed.  In all other respects the motion is denied, as explained above.

**IT IS FURTHER ORDERED** that Respondents will have 90 days from the date of entry of this order to file an answer, responding to Petitioner's remaining claims.  In all other respects, the schedule set forth in the order entered July 30, 2024 (ECF No. 34) remains in effect.

DATED THIS __11__ day of _____February_____, 2026.

GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE

13